United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TONG OUYANG,

Plaintiff,

v.

ALAMEDA POLICE DEPARTMENT,

Defendant.

Case No. 25-cv-10198-HSG

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: Dkt. No. 14

Pending before the Court is Defendant's motions to dismiss Plaintiff's complaint. *See* Dkt. No. 14 ("Mot"); Dkt. No. 17 ("Opp."); Dkt. No. 21 ("Reply"). The Court finds this matter appropriate for disposition without oral argument and the motion is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## I. BACKGROUND

On November 25, 2025, Plaintiff Tong Ouyang filed a complaint against Defendant Alameda Police Department ("APD"). *See* Dkt. No. 1 ("Compl."). Plaintiff alleges that he "endured repeated domestic abuse from his wife, Huiling Yang," and "[d]espite approximately ten reports made to [APD] detailing this abuse," Defendant "consistently failed to intervene or arrest Ms. Yang." *Id.* at 2. According to Plaintiff, APD "Officer Sharon Yunck, in particular, displayed gender bias by dismissing Mr. Ouyang's concerns, questioning his mental stability, and openly siding with Ms. Yang despite having only evidence to corroborate Plaintiff's true version of events." *Id.* This purported bias "culminated in Mr. Ouyang's false arrest in December 2023, based on Ms. Yang's unsubstantiated accusation of assault and despite the absence of physical evidence." *Id.* Plaintiff alleges that these "actions by the APD and Officer Yunck demonstrate a

United States District Court
Northern District of California

pattern of civil rights violations stemming from gender bias due to unwritten APD policies and a failure to properly train APD officers." *Id.*

Plaintiff brings claims against APD under 42 U.S.C. § 1983 for (1) violation of equal protection; (2) failure to provide equal police protection; (3) false arrest; (4) malicious prosecution; and (5) a *Monell* unconstitutional custom, policy, or practice claim. *Id.* ¶¶ 79–128.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotation omitted).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. DISCUSSION

### a. *Monell* Claim (Count V)

Defendant moves to dismiss Plaintiff' fifth cause of action, a *Monell* claim brought under 42 U.S.C. § 1983. Defendant argues that Plaintiff "alleges no facts to support his *Monell* claims for APD's failure to train or more generally, APD's alleged 'custom, policy, or practice' that led to 'the violations of Plaintiff's constitutional rights.'" Mot. at 13 (citing Compl. ¶¶ 121–28).

"A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove (1) that [the plaintiff] possessed a constitutional right of which [he] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Id.* (quotation omitted).

A plaintiff may establish *Monell* municipal liability under § 1983 even where the municipality does not expressly adopt the alleged policy. *See Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003). There are three alternative ways such liability can attach: (1) "if an employee commits a constitutional violation pursuant to a longstanding practice or custom;" (2) "when the person causing the violation has final policymaking authority;" *id.*, and (3) "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

At the pleading stage, a plaintiff's *Monell* claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts" to provide the opposing party with fair notice so it can defend itself. *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quotation omitted). Courts have found vague and unsupported assertions of municipal policies to be insufficient. *See, e.g.*, *Sweiha v. Cnty. of Alameda*, No. 19-CV-03098-LB, 2019 WL 4848227, at *4 (N.D. Cal. Oct. 1, 2019) (dismissing

*Monell* "longstanding practice or custom" claim where complaint's allegations of six incidents had "markedly different facts" and "d[id] not show a custom that is so persistent and widespread that it constitutes a permanent and well settled city policy" (quotation omitted) (cleaned up)); *Kollin v. City of Tehachapi*, No. 18-CV-00617-LJO-JLT, 2018 WL 4057491, at *6 (E.D. Cal. Aug. 24, 2018) (dismissing *Monell* "practice or procedure" claim where complaint "begins from the premise that the officer defendants acted unconstitutionally, then asserts various theories of *Monell* liability for why the allegedly unconstitutional acts may have taken place, but without facts to support those theories"); *Dougherty*, 654 F.3d at 900 ("Here, Dougherty's *Monell* . . . claim[ ] lack[s] any factual allegations that would separate [it] from the formulaic recitation of a cause of action's elements deemed insufficient by *Twombly*." (quotation omitted)).

*i. Policy, Practice, or Custom*

Plaintiff first alleges that "[t]he Alameda Police Department had a policy, practice, or custom of gender discrimination in domestic violence cases, providing less protection to male victims and assuming female complainants are truthful without evidence." Compl. ¶ 123. The analysis to determine whether a plaintiff alleges an unconstitutional "policy" as opposed to an unconstitutional "custom" or "practice" differs under *Monell*. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "However, with respect to an adopted municipal policy, a single incident can serve as the basis of a *Monell* claim so long as 'proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'" *Bagley v. City of Sunnyvale*, No. 16-CV-02250-LHK, 2017 WL 344998, at *14 (N.D. Cal. Jan. 24, 2017) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).

Here, Plaintiff adequately alleges a custom or practice. Plaintiff identifies eleven instances between July 2023 and September 2024 where he called APD and reported alleged "incidents of domestic abuse" against him by his wife. Compl. ¶ 26. Plaintiff alleges that "[e]ach of these calls resulted in police reports documenting the abuse," but these reports "often lack[ed] context and in

some cases, misrepresent[ed] important facts," and "APD never arrested [Plaintiff's wife] for domestic violence." *Id.* ¶¶ 27–28. Plaintiff alleges specific details about each of these incidents, including the incident numbers they would have been reported to Defendant under. For instance, Plaintiff alleges that "[o]n November 17, 2023, Yang, armed with scissors, forced her way into Plaintiff's bedroom, blocking his exit and detaining him while demanding money for her brother in China. Plaintiff again promptly contacted the police (filed as Incident #2311170157). No arrest nor warning was made against Yang." *Id.* ¶¶ 39–40. In another incident, "[d]espite video evidence showing Yang pushing Plaintiff, . . . the police report indicated 'no physical altercation occurred today.'" *Id.* ¶ 57. Plaintiff alleges that this preferential gender-based treatment "amounted to deliberate indifference to Plaintiff's constitutional rights" and "was the moving force behind the constitutional violations, as it directly led to the lack of protection for Plaintiff and his subsequent false arrest and malicious prosecution." *Id.* ¶ 124–25.

At this stage, the Court must take these factual allegations as true and construe the pleadings in the light most favorable to Plaintiff. Contrary to Defendant's suggestion, Mot. at 13, these allegations are sufficient support at this stage to provide a factual basis for Plaintiff's allegation that APD "had a policy, practice, or custom of gender discrimination in domestic violence cases, providing less protection to male victims and assuming female complainants are truthful without evidence." Compl. ¶ 123.[1] Courts have permitted *Monell* claims to withstand a motion to dismiss when similar numbers of related incidents were alleged. *See, e.g.*, *Mitchell v. Cnty. of Contra Costa*, 600 F. Supp. 3d 1018, 1030–31 (N.D. Cal. 2022) (finding *Monell* allegations sufficient to support inference of a widespread custom or practice where plaintiff identified 15 prior lawsuits involving similar misconduct); *Menotti v. City of Seattle*, 409 F.3d 1113, 1148 (9th Cir. 2005) (inferring widespread practice at summary judgment from five

[1] The Court notes that one of the alleged incidents may cut against Plaintiff: he alleges that "Yang forcibly entered Plaintiff's bathroom, kicked him, stepped on his toes, seized his work computer, and falsely claimed he hit her" on May 1, 2024. Compl. ¶ 53–54. But Plaintiff does not suggest that he was arrested or disciplined on that date. This could support a reasonable inference that APD uniformly discounted the other reports from Plaintiff and Ms. Yang, regardless of gender, and that the arrest in December 2023 had nothing to do with a custom or practice of differential treatment. This isn't enough to render Plaintiff's allegations implausible at this stage, but the evidence surrounding this incident and others may weaken Plaintiff's claims at a later stage.

incidents of suppression of political speech on the same day and absence of evidence that any officers were discharged or reprimanded). These specific factual allegations also make this case distinguishable from other cases where a plaintiff "only pleads actions related to his own arrest and prosecution" and "does not allege any facts that indicate that the . . . police force is regularly taking actions involving" unconstitutional conduct. *See Bagley*, 2017 WL 344998, at *15.

Defendant argues that only five of the above interactions with APD officers are relevant, as claims relating to the police incidents before November 25, 2023 (two years before Plaintiff filed suit), are time barred. Mot. at 10–13, 17. Plaintiff does not dispute that the relevant statute of limitations is two years, and instead argues that his claims were tolled under California Government Code § 945.3 between December 16, 2023, and June 2025, while the criminal charges relating to his December 2023 arrest were pending. *See* Opp. at 3–4. But even if Defendant is correct that claims based on incidents occurring before November 25, 2023, would be time barred despite the tolling provision in California Government Code § 945.3, these incidents are still relevant to determining whether Plaintiff pleads a basis for a plausible inference that APD had a custom or practice of gender-based preferential treatment that caused the constitutional violations of false arrest, malicious prosecution, and unequal treatment on and after December 16, 2023.[2]

Defendant also argues that these eleven incidents cannot show "a widespread custom" because these incidents "materially differ from Plaintiff's arrest on December 16, 2023," and "Plaintiff has not alleged that any other male domestic violence victim has been subjected to similar treatment by APD officers." Mot. at 17 (emphasis omitted). To support this argument, Defendant cites *Bedford v. City of Hayward*, No. 3:12-CV-00294-JCS, 2012 WL 4901434 (N.D. Cal. Oct. 15, 2012). There, the court considered allegations that the City of Hayward had a

[2] It's also not obvious that Plaintiff is trying to assert a *Monell* claim for any gender-based discrimination that took place during police responses prior to December, as opposed to the alleged false arrest, malicious prosecution, and gender-based discrimination that took place on or after December 16, 2023. If Plaintiff is alleging any claims distinctly predicated on underlying constitutional violations that took place before November 25, 2023, there is a real chance those claims are barred by the statute of limitations, even at the pleading stage. Plaintiff should clarify this point in any amended complaint.

widespread custom of "allowing employees to use pretext to stop African Americans for warrant checks and immunizing its employees by conducting sham investigations which occasioned the stops of African Americans." *Id.* at *13. The plaintiff had alleged that "on ten to twelve occasions in the year prior . . . and in a similar manner, [he] was threatened with arrest, ordered to the ground, his person and property searched, his identification taken from him and a warrant check run." *Id.* The court concluded that the plaintiff had failed "to state detailed facts similar to his account of the [relevant] incident" and had "not alleged that any other African American male ha[d] been subjected to similar discriminatory treatment." *Id.*

The facts here are distinguishable from *Bedford*. While the *Bedford* plaintiff made a single generalized allegation about 10 to 12 similar incidents, *Bedford v. City of Hayward et al.*, Case No. 3:12-cv-00294-JCS (N.D. Cal. July 26, 2012), Dkt. No. 36 ¶ 7, Plaintiff here has "state[d] detailed facts similar to his account of the [December 2023] incident," *see Bedford*, 2012 WL 4901434, at *13. To the extent *Bedford* could be read to require a plaintiff at the pleading stage to allege that some of those prior incidents happened to other, similarly-situated individuals in order to state a widespread custom, the Court disagrees with that conclusion. Defendant does not identify any binding authority that imposes this strict requirement, and Plaintiff's allegations raise a plausible inference of a custom "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918. That is enough at this stage, even if it may not carry the day at later stages.[3]

[3] Plaintiff also alleges that "[t]he Alameda Police Department failed to properly train its officers to handle domestic violence cases without gender bias, as evidenced by Officer Yunck's explicit statement of bias and the department's consistent failure to protect Plaintiff despite multiple reports." Compl. ¶ 126. The Court doubts that Plaintiff has adequately alleged what the inadequate training program was or how it caused the deprivation of Plaintiff's constitutional rights. However, because the Court concludes that Plaintiff has adequately pleaded a widespread custom, it does not reach the failure-to-train claim. *See Quinto-Collins v. City of Antioch*, No. 21-CV-06094-VC, 2022 WL 18574, at *2 (N.D. Cal. Jan. 3, 2022) (declining to reach failure-to-train theory and explaining that "different theories of liability" under *Monell* are "best understood" as "different arguments in support of a single claim"); *see also Adjaye v. Cook*, No. 23-CV-01234-AGT, 2024 WL 647636, at *3 (N.D. Cal. Feb. 15, 2024) (declining to dismiss particular theory because "Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims" (quotation omitted)).

*ii. Underlying Constitutional Violation*

Defendant also argues that "Plaintiff's *Monell* claims fail because there are no underlying constitutional violations. Mot. at 18. Plaintiff's complaint identifies three constitutional violations: deprivation of equal protection, false arrest, and malicious prosecution. *See* Compl. ¶¶ 122, 125.

Defendant argues that Plaintiff fails to state his equal protection claim because "he fails to allege how 'similarly situated individuals' were treated differently." Mot. at 18–19. Plaintiff alleges that "Defendant intentionally discriminated against Plaintiff based on his gender by treating Plaintiff differently than similarly situated female victims of domestic violence." Compl. ¶ 81. Defendant argues that this group "is overbroad, and Plaintiff fails to allege how such a group is 'similarly situated to [P]laintiff[] in all material respects.'" Mot. at 19 (quoting *Borges v. Cnty. of Mendocino*, 598 F. Supp. 3d 846, 858 (N.D. Cal. 2022)). The parties also dispute whether Plaintiff has adequately pleaded a "class of one" claim. *See* Mot. at 19; Opp. at 6.

First, the parties misconstrue the "class of one" doctrine, which does not appear to apply in this case. The Supreme Court has observed that "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that [he] has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008). Here, Plaintiff *is* alleging that he was treated differently because of his membership in a well-established class: "Defendant intentionally discriminated against Plaintiff based on his gender." Compl. ¶ 81; *see also id.* ¶¶ 88, 123.

Second, the Court concludes that Plaintiff has adequately alleged a similarly situated group: female victims of domestic violence. Defendant argues that "Plaintiff relies solely on APD's purported treatment of his wife," which "is flawed . . . because Plaintiff (a man) does not claim that Yang (a woman) is a victim of domestic violence." Mot. at 19. But the point is that APD allegedly thought that Yang was a victim of domestic violence (even if Plaintiff disputes that point), and Plaintiff alleges that she was treated differently than he was because of her gender.

Defendant next argues that Plaintiff fails to state a false arrest claim because he has not adequately pleaded a lack of probable cause. Mot. at 20–22. "Under the Fourth Amendment, a

warrantless arrest requires probable cause." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quotation omitted). "Probable cause to search is evaluated in light of the totality of the circumstances." *United States v. Brooks*, 610 F.3d 1186, 1193–94 (9th Cir. 2010) (quotation omitted).

Here, Plaintiff alleges that (1) "he had not engaged in any unlawful conduct"; (2) "[t]here was no physical evidence or witness corroboration supporting Yang's allegations," including "no injury, no blood, no bruises on her body"; (3) "Yang later stated she was not injured"; (4) Plaintiff told the officers that "Yang intentionally orchestrated the incident to feign domestic violence, and clarified that he did not hit Yang but only lightly touched her arm to gain access to the microwave after she deliberately blocked him for about ten minutes." Compl. ¶¶ 67–68, 103–05. Taking these factual allegations as true, this is sufficient for the Court to reasonably infer a lack of probable cause.[4]

Defendant argues that "Plaintiff's allegations of a lack of physical evidence . . . are also directly contradicted by the case report for Plaintiff's charge and arrest on December 16, 2023." Mot. at 21. Defendant asks the Court to take judicial notice of that case report, arguing that it is incorporated by reference in Plaintiff's complaint, since the complaint "necessarily relies on" the police report, and the report "forms the basis of Plaintiff's claims." *See* Dkt. No. 15 at 2. The Court disagrees. While a Court may consider a document that "forms the basis of the plaintiff's claim" even where "the complaint does not mention the document at all," that is a "rare instance[]." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quotation omitted). "[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.* Defendant seeks to "use the doctrine to insert [its] own version of events into the complaint to defeat otherwise cognizable claims," and that is not permitted at the pleading stage. Accordingly, the Court **DENIES** Defendant's request for judicial notice.

---

[4] Defendant argues that "Plaintiff admits that . . . Yang[] was interviewed by APD officers" and "admits he made physical contact with Plaintiff." Mot. at 21. Accepting these facts and making reasonable inferences in Plaintiff's favor, these allegations alone do not show that it is implausible that APD lacked probable cause at this stage.

United States District Court
Northern District of California

Finally, Defendant argues that Plaintiff has failed to allege malicious prosecution because he does not adequately allege denial of equal protection or lack of probable cause. Mot. at 22. "To claim malicious prosecution, a petitioner must allege that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 919 (9th Cir. 2012) (quotation omitted). The Court has already rejected Defendant's arguments as to probable cause and the alleged equal protection violation, and Defendant does not advance any alternative argument. As a result, the Court **DENIES** the motion as to Count V.

**b. Equal Police Protection Claim (Count II)**

Defendant argues that Plaintiff's equal police protection claim "appears to merely restate his equal protection claim." Mot. at 20. Plaintiff argues that these claims are distinct, since "[a]n Equal Police Protection claim under the Equal Protection Clause of the Fourteenth Amendment requires a plaintiff to demonstrate that police services were administered in a discriminatory manner," and the "failure to provide Plaintiff with the same police protection afforded to female victims of domestic violence . . . is a distinct constitutional injury." Opp. at 7–8.

The Court finds that the equal police protection claim, as pleaded, is nothing more than a different description of Plaintiff's equal protection claim. The Ninth Circuit has recognized similar claims for denial of equal police protection, but it has treated them as equal protection violations, not as separate and distinct causes of action. *See, e.g.*, *Navarro v. Block*, 72 F.3d 712, 715–16 (9th Cir. 1995), *as amended on denial of reh'g* (Jan. 12, 1996) (discussing argument that county "had a policy of affording victims of domestic violence less police protection than other crime victims" as an equal protection violation). Moreover, under both claims, Plaintiff alleges that identical conduct (differential police treatment) violated the Fourteenth Amendment, and both claims use functionally identical language of conduct and injury. *Compare* Compl. ¶¶ 83, 91, 123, 128, *with id.* ¶¶ 95, 100. Accordingly, the Court **DISMISSES** Count II with leave to amend, if Plaintiff can do so based on facts that do not simply duplicate his equal protection claim in Count V. *See M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012) ("It is well established that a district court has broad discretion to control its own docket, and that includes the power to

United States District Court
Northern District of California

dismiss duplicative claims.”).

**c. Remaining § 1983 Claims (Counts I, III, and IV)**

Defendant argues that the remaining claims should be dismissed because they are improperly alleged as *respondeat superior* liability claims. Mot. at 13. Plaintiff argues that this is a mischaracterization and that the *Monell* doctrine is the basis for his claims. Opp. at 5. But in support, he only points to Count V. *See id.*

“[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory.” *Monell*, 436 U.S. at 691. Even if that was not Plaintiff's intention, it is not clear from the complaint what the nature of these claims is. Defendant is correct that Counts I, III, and IV (unlike Count V) do not mention *Monell*, nor do they include *Monell*-like language, such as allegations that Defendant had an unconstitutional policy, practice, or custom. *See* Compl. ¶¶ 79–91, 101–20. The constitutional violations also seem to be identical to those discussed in the *Monell* claim, and Plaintiff is not asserting any claims against individual defendants at this point. As a result, the Court **DISMISSES** these claims with leave to amend.

## IV. CONCLUSION

Defendant's motion, Dkt. No. 14, is **GRANTED IN PART** and **DENIED IN PART**. Counts I–IV are **DISMISSED WITH LEAVE TO AMEND**. Any amended complaint must be filed within 21 days of the date of this order and may not include any new claims or defendants.

The Court further **SETS** a case management conference in this case on September 8, 2026, at 2:00 p.m. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities. The parties are **DIRECTED** to file a joint case management statement by September 1, 2026.

//

//

//

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: 8/10/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge